IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BOBby COCHRAN, <br><br> Plaintiff, <br><br> v. <br><br> JP MORGAN CHASE, N.A., <br><br> Defendant. | Civil No. 3:10-0753 <br> Judge Trauger <br> Magistrate Judge Griffin |

## AMENDED COMPLAINT FOR VIOLATION OF RESPA, TILA, FRAUD AND BREACH OF CONTRACT

### PARTIES

(1) Plaintiff Bobby Cochran, hereinafter referred to as the "Plaintiff."

(2) Currently known defendant is JPMorgan Chase N.A. ("JPMC") hereinafter referred to as the "Defendant".

### INTRODUCTION

(3) Plaintiff(s) claims against Defendant includes violations of the Truth In Lending Act ("TILA") (*15 U.S.C. §§1601 et seq.*) and the Real Estate Settlement and Procedures Act ("RESPA") (*12 U.S.C. §2602*).

(4) Plaintiff(s) claims against Defendant also include causes of action for fraud and breach of contract.

(5) The State of Tennessee is a Non-Judicial State and Plaintiff is entitled to the protections and requirements provided under the Tennessee laws and Statutes. All foreclosing entities must strictly comply with these prerequisites as well as other basic principles of contract law and consumer protection law.

(6) Until recently, there has been a presumption of competency afforded to these foreclosure entities, allowing these foreclosure cases to move forward.

(7) In recent months, however, many foreclosing entities, including the Defendant, have demonstrated a pervasive and willful disregard of knowledge, facts, and statutes in allowing these foreclosures to proceed.

(8) In Tennessee the foreclosure process has become an undisciplined and lawless rush to seize homes.

(9) Thousands of foreclosures are plainly void under Tennessee statute. Many borrowers never

obtain the statutorily required notices, and a majority of the foreclosures are processed entirely on inaccurate recitations concerning ownership of the deed of trust, the note, or the assignment.

(10) The reckless, industry-wide culture of the 'foreclosure mills' has enabled the Defendant to aggressively litigate against the borrowers without any regard for the satisfaction of the legal burdens required.

(11) This same reckless industry-wide attitude also manifests itself in a complete refusal and disregard to negotiate in good faith with the borrowers which routinely have the Defendant making misrepresentations and misleading statements to the Plaintiff in any type of loan modification, short sale or settlement discussions.

## JURISDICTION AND VENUE

(12) Venue is proper in this judicial district pursuant to *28 U.S.C. § 1391(b)* because a substantial portion of the events, omissions and wrong doings alleged in this complaint occurred within the District of Tennessee.

(13) Defendant upon information and belief are authorized to regularly do business in the District of Tennessee.

(14) This is an action that includes violations of the Truth-in-Lending Act (*TILA 15 U.S.C. §1601 et seq.*)

(15) This is an action that includes violations of the Real Estate Settlement and Procedures Act (*RESPA 12 U.S.C. §2602*).

(16) Plaintiff further invokes the pendent jurisdiction of this Court to consider claims arising under Tennessee state law.

(17) The purported contracts between the Plaintiff and Defendant were made and to be performed, and the obligations arose in the District of Tennessee.

(18) Jurisdiction is thus founded on *28 U.S.C. §1331* and *§1367*.

## INDUSTRY BACKGROUND

(19) Attorneys General in all 50 states have launched probes into illegal foreclosure cases in their states.

(20) Defendant and other mortgage services are now under pressure to review much of the legal documentation submitted or relied upon in connection with these illegal foreclosure actions after employees and contractors admitted in sworn depositions that due to the tremendous volume, they did not take the time to read loan documents, much less check for their accuracy:

As just one of hundreds of examples, Renee Hertzler, a Bank of America executive, said in a deposition that she has signed as many as 8,000 foreclosure documents a

month without reviewing them.  **JPMorgan** said Wednesday it was launching investigations into potential robo-signing within its services.  Robo-signing refers to the signing of thousands of foreclosure documents without any knowledge to the accuracy of the documents or without knowing what they contained.

A California attorney general recently demanded JPMorgan halt all foreclosures within that state.

(21)     In most foreclosure cases purported "lenders" have brought foreclosure suits with a complete disregard of whether or not they have met their burden.

(22)     Defendant has consistently, through their actions and/or inactions, acted fraudulently in initiating and pursuing foreclosure and eviction claims.

(23)     Defendant's failures to adhere to the procedural requirements has directly and proximately placed Plaintiff in imminent danger of losing his property.

(24)     Defendant's failures to adhere to the procedural requirements has directly and proximately caused severe and irreparable damage to the Plaintiff's credit scores.

## STATEMENT OF FACTS

(25)     Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

(26)     Plaintiff entered into what he believed at the time to be a loan agreement with Great Western Mortgage on September 15, 1995.

(27)     Said contract consisted of a Promissory Note and a Deed of Trust (DOT) purportedly signed on September 15, 1995 and recorded on September 22, 1995.

(28)     Great Western Mortgage was compensated from funds assessed to Plaintiff at closing as disclosed on the Housing and Urban Development Form 1 ("HUD1") Settlement Statement, creating a duty of good faith and fair dealing between Great Western Mortgage and Plaintiff.

(29)     Great Western Mortgage, acting in violation of their fiduciary duty to Plaintiff, gave only partial disclosure to Plaintiff.

(30)     Great Western Mortgage further misinformed Plaintiff as to the availability of credit to Plaintiff by failing to advise Plaintiff that Plaintiff qualified for a less expensive loan product than the loan product proposed to the Plaintiff.

(31)     Plaintiff, by engaging the services of duly licensed professionals, exercised due diligence to insure good faith and fair dealings concerning compliance with all laws, rules, and regulations concerning the note and associated lien document.

(32)     On the day of closing, Plaintiff was provided with the HUD1 statement.

(33)     At closing, assessed fees as listed on the settlement statement were:

| | | |
|---|---|---|
| 801 | Loan Origination Fee | $750.00 |
| 803 | Appraisal Fee to Great Western Mortgage $285 | P.O.C. |

| | | |
|---|---|---:|
| 804 | Credit Report to Great Western Mortgage | $50.00 |
| 808 | Tax Service Fee to Great Western Mortgage | $79.00 |
| 809 | Courier Fee to Great Western Mortgage | $9.50 |
| 810 | Flood Certification to Great Western Mortgage | $30.00 |
| 903 | Hazard Insurance Premium for 1 years to All-state | $292.00 |
| 1008 | Aggregate Impd | $686.74 |
| 1101 | Settlement Closing fee | $175.00 |
| 1105 | Doc Prep Fee to Gregory S. Perrone | $75.00 |
| 1108 | Title Insurance to Stewart Title Guaranty, G. Perrone, Agent | $590.10 |
| 1201 | .Recording fees:  Deed $8.00; Mortgage $32.00; Releases $4.00 | $40.00 |
| 1203 | .State tax/stamps:  Deed $340.29; Mortgage $83.05 | $423.34 |
| 1301 | .Survey to AC Projects | $135.00 |
| 1303 | .Ship Package United Parcel Service | $14.50 |
| 1400 | .Total Settlement Charges | $3350.08 |
| 210 | .City/town taxes 1/1/95 to 9/15/95 | 19.35 |
| 211 | .County taxes 1/1/95 to 9/15/95 | 57.39 |

(34) ` At closing, Great Western Mortgage failed to provide documentation to show that the above referenced fees were authorized by law, that the services billed for were necessary, that the amounts charged for said services were reasonable, and that they did not take an undisclosed markup on said fees. The fees assessed on the settlement statement were added to the principal on the note and interest was charged to Plaintiff on said amounts.

(35) Plaintiff provided to Great Western Mortgage, at the time of the consummation of the Promissory Note, a document which established a lien against the property.  Said lien document specifically stated that it was intended to protect Great Western Mortgage from loss if Plaintiff failed to abide by the promises made in the Promissory Note.

(36) Immediately upon Plaintiff signing of the Promissory Note and DOT, Great Western Mortgage appears to have negotiated the note to Great Western Bank, a Federal Savings Bank for consideration accepted.

(37) Upon sale of the Promissory Note from Great Western Mortgage to Great Western Bank, a Federal Savings Bank, Great Western Mortgage bifurcated (separated) the Promissory Note and DOT by retaining possession of the DOT while transferring possession of the Promissory Note. *(see Landmark v. Kessler)*( **216 P.3d 158 (Kan. 2009)**).  Carpenter v. Longan U.S. 1872 (**83 U.S. (16 Wall.) 271**).

(38) The Promissory Note was subsequently sold repeatedly to other parties who failed to properly register said sales with the Williamson County Recorder's Office, thereby, obscuring the true holder of the Promissory Note and depriving Williamson County of proper and rightful recording fees.

(39) Transfer fees were fraudulently withheld from the Williamson County Treasurer due to the willful act on the part of Great Western Mortgage, Great Western Bank, a Federal Savings Bank and all of the other 'pretend lenders', as they devised a scheme to fraudulently circumvent the proper assignments and

avoid paying of the county filing fees unjustly enrich themselves.

(40) At some point unknown to Plaintiff, Washington Mutual became the servicer of the Promissory Note.

(41) Plaintiff has checked the local Williamson County Records and found no assignment from Great Western Bank, a Federal Savings Bank, to Washington Mutual, or to any other company and/or servicing agent, except MERS assignment to JP MORGAN CHASE, N.A..

(42) Plaintiff is party to an undisclosed investment contract with an undisclosed party(ies) who are the only real party in interest with legal standing to foreclose on Plaintiff's property.

(43) The facts that Defendant has concealed, and the misrepresentations that were made are material to this complaint.

(44) Said omissions and misrepresentations were made with the knowledge of their falsity and with utter disregard and recklessness as to whether they were true or false and with the intent of misleading Plaintiff into relying upon them.

(45) Said omissions and misrepresentations have directly and proximately caused severe and irreparable damage to the Plaintiff's credit scores.

(46) Compliance with the requirements of the law is essential in protecting the rights of homeowners from being foreclosed on.

(47) Compliance with these requirements is not onerous to the Defendant and any so called 'burdens' are far outweighed by the interest of justice.

(48) This willful disregard of knowledge, facts, and statutory law has caused severe distress and other damages to Plaintiff.

## FIRST COUNT - FRAUD

(49) Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

(50) The facts that Defendant concealed, and the misrepresentations that were made are material to the transactions at hand.

(51) Said omissions and misrepresentations were made with the knowledge of their falsity, or with such utter disregard and recklessness as to whether they were true or false and with the intent of misleading Plaintiff into relying upon them.

(52) Defendant made proactive statements of fact to Plaintiff giving partial disclosure. Defendant intended that Plaintiff would rely on, in making a decision to enter into an express contract for the purchase of said property.

(53) By said proactive statements intended as partial disclosure, Defendant invoked a duty to full disclosure. Defendant failed to give full disclosure to Plaintiff.

(54) Plaintiff did not have equal access to, or equal opportunity to discover information upon which Defendant gave partial disclosure.

(55) Plaintiff relied on the disclosure given by Defendant as being complete.

(56) As a direct and proximate result of Defendant's failure to fully disclose material facts, Plaintiff was harmed.

(57) The elements of a fraudulent omissions claim are: (1) concealment or nondisclosure of a material fact, (2) knowledge of falsity, (3) intent to defraud, (4) justifiable reliance, and (5) resulting damages. *Charnay v. Cobert, 145 Cal. App. 4th 170, 184 (2006). See also Lazar v. Super. Ct., 12 Cal. 4th 631, 638 (1996).[*48]*.

(58) While certain fraud claims are subject to Fed. R. Civ. P. 9(b), Plaintiff need only plead his claim pursuant to Fed. R. Civ. P. 8(a). A fraud by omission claim does not need to meet the requirements of Rule 9(b) because it is based on the *absence* of representations, rather than on representations that were made and can be detailed in a pleading. *See, e.g., Falk v. GMC, 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007)*.

(59) Plaintiff is only required to state the factual basis for his Fraud claim pursuant to Rule 9(b). To meet the requisite level of specificity, Rule 9(b) only requires identification of circumstances constituting fraud, including the time, place, and nature of the alleged fraudulent activities, such that a defendant can prepare adequate answer to allegations. *(Bosse v. Crowell Collier & MacMillan, 565 F.2d 602, 611 (9th Cir. 1977))*.

(60) A pleading is sufficient under Rule 9(b) if it identifies circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations. *(Neubronner v. Milken, 6 F.3d 666, 671-672 (9th Cir. 1993),* quoting *Gottreich v. SF Inv. Corp., 552 F.2nd 866 (9th Cir. 1977).)* However, Rule 9(b) does not require nor make legitimate pleading of detailed evidentiary matter. *(Walling v. Beverly Enterprises, 476 F.2d 393, 397 (9th Cir. 1973).* Rule 9(b) may be relaxed with respect to matters within opposing party's knowledge. *(Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993)*.

(61) In cases where fraud was conducted over several years, a plaintiff is not required to allege each date of each defendant's fraudulent conduct since such requirement would defeat the purpose of Rule 8 requiring that pleading be short, plain, and in concise statements.

(62) The reliance of Plaintiff on the statements and omissions that were made by Defendant are justifiable, given the circumstances, and said reliance resulted in injury to the Plaintiff, as this instant lawsuit will attest.

(63) When Defendant signs foreclosure documents and when Defendant enters into modification discussions with the Plaintiff as outlined above, they have a duty to be truthful with the Plaintiff about the

consequences and circumstances of the loan, by virtue of being loan officers and by virtue of their positions as a fiduciary.

(64) Plaintiff is informed and believes that Defendant acted in concert with others in promulgating false representations to cause Plaintiff to enter into the loans without knowledge or understanding of the terms thereof.

(65) At all times, Defendant has acted with a conscious, willful and malicious disregard for the rights and safety of Plaintiff, knowing that there was a great probability that their actions would cause harm to the Plaintiff.

(66) Because of the actions and omissions outlined above, Defendant has committed fraud upon the Plaintiff.

(67) Tennessee and other states throughout the nation have enacted Consumer Fraud Laws to provide consumers with a private right of action under these statutes and to protect consumers.

(68) A practice is unfair if the court determines that the impact of the practice or act on its alleged victim outweighs the reasons, justifications, and motives of the alleged wrongdoer. *(Podolsky v. First Healthcare Corp.., 50 Cal. App. 4th 632, 647 (1996))*.

(69) A practice is fraudulent if the members of the public are likely to be deceived by the practice. (*Schnall v. Hertz Corp., 78 Cal. App. 4th 1144, 1167 (2000)*.

(70) Plaintiff has suffered severe emotional distress, mental anguish, harm, humiliation, embarrassment, and mental and physical pain and anguish, all to Plaintiff's damage in an amount to be established at trial, in excess of $1,000,000.00.

(71) Plaintiff has suffered damages as a direct and proximate result of the actions of the Defendant.

## SECOND COUNT – VIOLATION OF TENNESSEE CODE § 66, CHAPTER 5, PART 1, SECTION 66-5-106

(72) Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

(73) Plaintiff is a homeowner who is involved in foreclosure proceedings initiated by the Defendant.

(74) In violation of these statutes, Defendant has affirmatively misrepresented and knowingly concealed, suppressed and failed to disclose material facts with the intent that others rely upon such concealment and deception.

(75) The conduct of Defendant, as set forth above, constitutes unfair, fraudulent and deceptive trade practices prohibited under Tennessee law and the consumer fraud act.

(76) As a result of Defendant unfair, fraudulent and deceptive practices, Plaintiff has suffered an ascertainable loss of monies and/or property and/or value.

(77) Defendant sought to foreclose upon a "residential mortgage" as defined by the Tennessee law and therefore Plaintiff is entitled to the protections and requirements set forth in the Tennessee Foreclosure Laws.

(78) Defendant has already threatened to foreclose upon property 7176 Chester Rd, Plaintiff's primary residence, during the course of this case, and has illegally tried to sell the property at a Trustee sale, without standing.

(79) Defendant has failed to comply with the Tennessee laws and statutes by failing to properly execute foreclosure documents required to foreclose.

(80) Defendant has failed to comply with the Tennessee laws and statues by failing to properly execute proper procedures required to hold a Trustee Sale.

(81) Such callous disregard for the procedural safeguards of a foreclosure proceeding has harmed the Plaintiff.

(82) Plaintiff has suffered damages as a direct and proximate result of the actions of the Defendant.

### THIRD COUNT - BREACH OF CONTRACT

(83) Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

(84) Defendant drafted and entered into individual contract with the Plaintiff.

(85) Defendant violated these contracts.

(86) The actions of Defendant give rise to the claim of breach of contract.

(87) Plaintiff has suffered damages as a direct and proximate result of the actions of the Defendant.

### FOURTH COUNT – BREACH OF CONTRACT OF GOOD FAITH AND FAIR DEALING

(88) Plaintiff repeats and realleges all paragraphs above as if fully set forth herein

(89) Defendant acted at all times relevant with bad motives or intentions and contrary to the reasonable expectations of the Plaintiff.

(90) "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." _Price v. Wells Fargo Bank, 213 Cal.App.3d 465, 478, 261 Cal. Rptr. 735 (1989);_ [*15] Rest.2d Contracts § 205.

(91) A mortgage broker has fiduciary duties. _Wyatt v. Union Mortgage Co., (1979) 24 Cal. 3d. 773._ Further, In _Jonathan Neil & Associates, Inc. v Jones, (2004) 33 Cal. 4th 917_.

(92) A fiduciary must protect the rights, monetary interest and make decisions in the best interest of the person who it is representing.

(93) Plaintiff relied, to his detriment, on misleading assertions and conduct of the Defendant.

(94) The conduct of Defendant has deprived Plaintiff of the benefit of the bargain originally intended by the parties.

(95) Under the Covenant of Good Faith and Fair Dealing, neither party is allowed to do anything which will injure the rights of the other party to receive benefits of the agreement. (*Andrews v. Mobile Aire Estates 125 Cal. App. 4th 578, 589 (2005)*, quoting *Gruenberg v Aetna Ins. Co. 9 Cal. 3d 566, 573 (1973).*).

(96) In the failure to dutifully perform the terms of the agreements detailed above, Defendant has violated the duty of good faith and fair dealing that arises in all contracts as more fully set forth in the factual allegations above.

(97) Under the law, every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. (*Marsu, B.V. v Walt Disney Co., 185 F 3d. 932, 937 (9th Cir. 1999),* quoting *Carma Developers, Inc v Marathon Dev. Cal., Inc., 2 Cal 4th 342, 371 (1992).*) Plaintiff sufficiently placed Defendant on notice of Plaintiff's allegations.

(98) Plaintiff has suffered damages as a direct and proximate result of the actions of Defendant.

### FIFTH COUNT – BREACH OF IMPLIED CONTRACT

(99) Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

(100) Defendant made various oral agreements and representations to Plaintiff.

(101) Defendant violated these and other oral representations.

(102) The actions of Defendant give rise to the claim of breach of implied contract.

(103) Plaintiff has suffered damages as a direct and proximate result of the actions of the Defendant.

### SIXTH COUNT – BREACH OF FIDUCIARY DUTY

(104) Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

(105) Defendant owed a fiduciary duty to the Plaintiff to act primarily for his benefit, to act with proper care and diligence, and not to make a personal profit at the expense of the Plaintiff.

(106) Defendant owed a duty of care under TILA, HOEPA, RESPA and the Regulations X and Z promulgated there under to, among other things, provide proper disclosures concerning the terms and conditions of the loans they marketed, and to avoid paying undue compensation such as "yield spread premiums" to mortgage Agents and loan officers.

(107) Defendant knew or in the exercise of reasonable care should have known, that the loan transactions involving Plaintiff and other persons similarly situated were defective, unlawful, in violation of federal and state laws and regulations, and would subject Plaintiff to economic and non-economic harm and other detriment.

# SEVENTH COUNT – VIOLATIONS OF TRUTH IN LENDING

(108) Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

(109) The transactions referenced herein were subject to the Plaintiff's right of rescission as described by **15 U.S.C. § 1635(a)** and Regulation **Z § 226.23 (12 C.F.R. § 226.23).**

(110) Defendant violated **15 U.S.C. § 1635(a)** and Regulation **Z § 226.23(b)** with regards to the purported Notice of Right to Cancel.

(111) The Notice of Right to Cancel documentation was not provided to Plaintiff or if furnished to Plaintiff it failed to 1) correctly identify the transaction; 2) clearly and conspicuously disclose the Plaintiff's right to rescind the transaction three days after delivery of all required disclosures; 3) clearly and conspicuously disclose how to exercise the right to rescind the transaction, with a form for that purpose; 4) clearly and conspicuously disclose the effects of rescission; and 5) clearly and conspicuously disclose the date the rescission period expired.

(112) Plaintiff believes that Defendant violated TILA at the time of origination because, among other things, multiple good faith estimates ("GFE") were used to mislead and confuse Plaintiff about the actual terms of the Promissory Notes.

(113) Plaintiff is informed and believes that Defendant's violation of law rendered the credit transactions null and void, invalidates Defendant's claimed interest in the Plaintiff's property and entitles Plaintiff to damages as proven at trial.

(114) TILA damages and rescission claims are not time barred. It is a well-established rule that the doctrine of equitable tolling suspends the statute of limitations until Plaintiff discovers or has reasonable opportunity to discover the fraud or the non-disclosures that form the basis of a TILA action. (*King v. California, 784 F.2d 910, 915 (9th Cir. 1986)*; see also, (*Eubanks v. Liberty Mortgage Banking Ltd., 976 F. Supp. 171 (9th Cir. 2003)*, noting that TILA claims are subject to equitable tolling in instances of fraud.

(115) District courts have discretion to adjust the limitations period. (See, *Pelayo v. Home Capital Funding, 2009 U.S. Dist. LEXIS 44453,* *14-16 (S.D. Cal. May 22, 2009).) "The motion [to dismiss] should be granted 'only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'" (*Plascencia v. Lending 1st Mortg., 583 F. Supp. 2d 1090, 1098 (N.D. Cal. 2008),* [*19] citing *Durning v. First Boston Corp., 815 F.2d 1265, 1268 (9th Cir. 1987)*; see also, *Huynh v. Chase Manhattan Bank, 465 F.3d 992, 1003-04 (9th Cir. 2006)* holding that it is rarely appropriate to grant a Rule 12(b)(6) motion to dismiss if equitable

tolling is at issue, given that the applicability of equitable tolling depends on matter outside of the pleadings and Court's review is limited to the complaint.

(116) The issue of equitable tolling must be considered when "the complaint, liberally construed in light of our 'notice pleading' system, adequately alleges facts showing the potential applicability of the equitable tolling doctrine." (Id., citing *Cervantes v. City of San Diego, 5 F.3d 1273, 1277 (9th Cir. 1993)*

(117) Plaintiff has pled that facts surrounding his loan transactions were purposefully hidden and continue to be hidden to this day.

(118) In Tennessee, the statute of limitation runs from actual discovery. (See, *Katz v. Bank of California, 640 F.2d 1024, 1025 (9th Cir. 1981)* citing (*NLRB v. Don Burgess Constr. Corp., 596 F.2d 378, 382-383 (9th Cir. 1979)*)). TILA does not permit constructive disclosure of terms, but specifically provides for actual, express disclosures to be made to the borrower by the creditor prior to and upon closing of the loan. ( **15 U.S.C. § 1601 et seq**.)

(119) Defendant failed to provide the requisite TILA disclosures to the Plaintiff at the inception of the purported loan.

(120) Plaintiff, by engaging licensed professionals to assist Plaintiff in the procurement of the note exercised due diligence. It was only after news reports of predatory lending practices came to the attention of Plaintiff that Plaintiff discovered concealment of TILA violations by Defendant within the past year, when Plaintiff engaged the services of a professional to examine the loan for improprieties.

(121) Plaintiff's allegations adequately state the applicability of the equitable tolling doctrine. Thus, Plaintiff's TILA claims are not barred. (*2009 U.S. Dist. Ct. Motions 875682; 2010 U.S. Dist. Ct. Motions LEXIS 7191).*

## SUFFICIENCY OF PLEADING

(122) A complaint should not be dismissed "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of her claim which would entitle her to relief". (*Housley v. U.S. (9th Cir. Nev. 1994 35 F.3d 400, 401)*

(123) "All allegations of material fact in the complaint are taken as true and construed in the light most favorable to Plaintiff." (*Argabright v. United States, 35 F.3d 1476, 1479 (9th Cir. 1996)*.

(124) Plaintiff has sufficiently pled that relief can be granted on each and every one of the complaint's causes of action.

(125) The Complaint includes short, plain and precise statements of the basis for relief in accordance with Fed. Rule Civ. Proc. 8(a).

(126) The Complaint contains cognizable legal theories, sufficient facts to support cognizable legal theories, and seeks remedies to which Plaintiff is entitled. (*Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988); King v. California, 784 F.2d 910, 913 (9th Cir. 1986)*).

(127) "The legal conclusions in the complaint can and should be drawn from the facts alleged, and, in turn, the court should accept them as such." (*Clegg v. Cult Awareness Network, 18 F.3d 752 (9th Cir, 1994)*).

(128) Plaintiff's complaint contains claims and has a probable validity of proving a "set of facts" in support of his claim entitling him to relief. (*Housley v. U.S. (9th Cir. Nev. 1994) 35 F.3d 400, 401*). Therefore, relief as requested herein should be granted.

## DEMAND FOR TRIAL BY JURY

(129) Plaintiff asserts his rights under the Seventh Amendment to the U.S. Constitution and demand, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## DEMAND FOR PRODUCTION OF INSURANCE AGREEMENTS

(130) Plaintiff hereby makes demand that Defendant disclose to the undersigned whether there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy all or part of a judgment which may be entered in the action or to indemnify or reimburse for payment made to satisfy the judgment.

(131) If so, please attach a copy of each, or in the alternative, state under oath and certification: (A) policy number; (B) name and address of insurer; (C) inception and expiration date; (D) names and addresses of all persons insured thereunder; (E) personal injury limits; (F) property damage limits and (G) medical payment limits.

**WHEREFORE**, Plaintiff seeks a judgment against the named Defendant, as follows:

- For rescission of the loan contract and restitution by Defendant to Plaintiff according to proof at trial;
- For disgorgement of all amounts wrongfully acquired by Defendant according to proof at trial;
- For actual monetary damages in the amount of $560,000.00;
- For pain and suffering due to extreme mental anguish in an amount to be determined at trial;
- For pre-judgment and post-judgment interest according to proof at trial;
- For punitive damages according to proof at trial in an amount equal to $2,000,000.00; and

●For such other relief as the Court deems just and proper.

## VERIFICATION

I do swear and affirm that all statements made herein are true and accurate, in all respects, to the best of my knowledge.


                                          Respectfully Submitted,


                                          ___s/_Bobby Cochran_____

                                        Bobby Cochran
                                        7176 Chester Rd
                                        Fairview, TN 37062
                                        Cochranbgc@aol.com
                                        615-799-8040  615-406-6667

# CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2011, a copy of the foregoing was filed in the above captioned action. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

James C. Bradshaw, BPR # 013170
WYATT, TARRANT & COMBS, LLP
2525 West End Avenue 37203-1423
jbradshaw@wyattfirm.com
615-244-0020

Counsel for Defendant JP Morgan Chase, N.A.

        __s/_Bobby Cochran_____
        Bobby Cochran

          Bobby Cochran
          7176 Chester Rd
          Fairview, TN 37062
          Cochranbgc@aol.com
          615-799-8040 615-406-6667